UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                                Crim. No. 2:02-cr-106-1

Shawn Gibson

## REPORT AND RECOMMENDATION
(Doc. 64)

      Shawn Gibson, proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. (Doc. 64.) On November 17, 2003 Gibson was sentenced by United States District Judge William K. Sessions III to a term of imprisonment of 300 months following his pleas of guilty to multiple violations of the Controlled Substances Act. (*See* Doc. 59 at 1, 2.) In the instant Motion, Gibson contends that his sentence should be vacated and that he should be resentenced in light of the 2014 U.S. Supreme Court decision in *Burrage v. United States*, 134 S. Ct. 881 (2014). (Doc. 64 at 4.) Concluding that Gibson's Motion is barred by the statute of limitations which governs § 2255 motions and by Gibson's procedural default, I recommend that the Motion (Doc. 64) be DENIED.

I.  **Background**

    A.  **The Indictment and Gibson's Pleas of Guilty**

On July 24, 2002 the federal grand jury for the District of Vermont returned an indictment charging Shawn Gibson with nine felony violations of the Controlled Substances Act. (Doc 3.) Gibson was represented throughout the proceedings in this Court by attorney James Murdoch, a member of the bar of this Court and an experienced federal criminal practitioner.

On June 27, 2003 a plea agreement was filed wherein Gibson agreed to plead guilty to Counts 3, 4, 5, 6, 7, and 9 of the Indictment. (Doc. 38.) Counts 3 and 6 charged Gibson with knowingly and intentionally distributing heroin to a minor, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 859(a). (Doc. 3 at 5, 8.) Counts 4, 5, 7, and 9 charged Gibson with knowingly and intentionally distributing heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (*Id.* at 6, 7, 9, 11.) As part of his counseled Plea Agreement, Gibson also agreed to waive his right to proceed by means of indictment and plead guilty to an Information which charged Gibson with engaging in a conspiracy with others to distribute more than 100 grams of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). (Doc. 38 at 1.) The Information charging that additional offense was filed with the Plea Agreement. (Doc. 37.)

For its part, the government agreed to move to dismiss Counts 1 and 2 of the Indictment at sentencing.[1]  (Doc. 38 at 3, ¶ 7(a).)  The government also agreed to recommend that Gibson had manifested an acceptance of responsibility for his offense conduct and receive a corresponding offense-level reduction pursuant to U.S. Sentencing Guideline § 3E1.1.  (*Id.* ¶ 7(b).)  However, as explained in greater detail below, the Plea Agreement did not resolve the charge in Count 8 of the Indictment.  (*See id.* at 1.)  Count 8 charged Gibson with knowingly and intentionally distributing heroin on July 31, 2001 to Jill McCarthy and that Ms. McCarthy's death resulted from the use of the heroin distributed to her by Gibson, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (*See* Doc. 3 at 10.)  The Plea Agreement provided that in the event Gibson was convicted of Count 8, the government was relieved of its obligation to recommend that Gibson had manifested an acceptance of responsibility for his other offenses.  (Doc. 38 at 4–5, ¶ 9.)

On June 27, 2003 Gibson appeared in the district court with counsel to enter his pleas of guilty pursuant to the Plea Agreement.  (*See* Doc. 70.)  At that hearing, Gibson waived his right to proceed by means of an indictment (Doc. 70 at 8; *see also* Doc. 39) and entered a plea of guilty to the conspiracy charge in the Information, as well as the six felony counts in the Indictment to which he had agreed to enter a plea of guilty.  (Doc. 70 at 13.)  Judge Sessions engaged in the colloquy required by Federal Rule of Criminal Procedure 11 and accepted Gibson's pleas, finding them to be knowing and voluntary.

---

[1] Count 1 charged Gibson with engaging in conspiracy to distribute 100 grams or more of heroin with death resulting, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), and Count 2 charged Gibson with maintaining a residence for the purpose of distributing and using heroin, in violation of 21 U.S.C. § 856.  (Doc. 3 at 1–4.)  As noted above, the government agreed to dismiss these charges at the time of sentencing.  (Doc. 38 at 3, ¶ 7.)

(*Id.* at 13–29.)  The Court also noted that the bench trial on Count 8 would commence on July 29, 2003.  (*Id.* at 29.)

On July 28, 2003 a document styled as an Addendum to the Plea Agreement (Addendum) was filed by the parties.  (Doc. 52.)  In that document, Gibson, again with benefit of counsel, agreed to plead guilty to Count 8 (*id.* at 1, ¶ 1), which charged Gibson with distributing heroin to Jill McCarthy with her death resulting from the distribution (*see* Doc. 3 at 10).  In the Addendum, Gibson acknowledged his understanding that by his plea Gibson faced a term of imprisonment of up to life and a mandatory minimum term of imprisonment of 20 years, pursuant to 21 U.S.C. § 841(b)(1)(C).  (Doc. 52 at 1, ¶ 2.)  On July 31, 2003 Gibson again appeared before Judge Sessions.  (Doc. 67.)  Judge Sessions conducted the complete colloquy required by Rule 11.  (*Id.* at 2–30.)  He ascertained that Gibson understood his constitutional rights, explaining that the government bore the burden to prove each element of the crime of distribution of heroin with death resulting.  (*Id.* at 4–5.)  Judge Sessions also ascertained from Gibson that Gibson understood the maximum penalties he faced as a consequence of his plea, including the fact that Gibson faced a 20-year mandatory minimum term pursuant to 21 U.S.C. § 841(b)(1)(C).  (*Id.* at 4–7.)  Judge Sessions reviewed the Addendum in detail with Gibson and determined that no promises or assurances beyond those set forth in the Addendum had been made to Gibson to induce him to plead guilty to the charge. (*Id*. at 9–10.)  Judge Sessions thereupon requested that the prosecutor provide a factual basis for the plea.  (*Id.* at 11.)  Assistant United States Attorney (AUSA) Thomas D. Anderson described a lengthy investigation into the heroin distribution activities of

Gibson which culminated in the Indictment and Gibson's initial pleas of guilty to the crimes charged in Counts 3, 4, 5, 6, 7, and 9 on June 27, 2003. (*Id*. at 11–12.) The AUSA then focused upon the facts surrounding the death of Gibson's intimate partner, 22-year-old Jill McCarthy, on July 31, 2001. (*Id.* at 13–28.) McCarthy was found dead that day in Gibson's bedroom at his parents' home at 29 Myers Court in South Burlington, Vermont by Gibson's mother, Ruby Gibson. (*Id.* at 12, 20.) Two hypodermic needles, one of which had been used and tested positive for the presence of heroin residue, as well as 11 wax bags with heroin residue were found in the bedroom. (*Id.* at 20–21.) The AUSA proffered that five witnesses would establish that Gibson sold heroin to each at the Myers Court residence on the day before Ms. McCarthy's death on July 30, 2001.[2] (*Id.* at 15–20.) According to the AUSA, several of these individuals would have testified that Gibson specifically cautioned each that the heroin was "really strong." (*See id.* at 14.) Ruby Gibson reported to police that she discovered McCarthy only after McCarthy's father stopped by the Gibson home that afternoon seeking his daughter. (*Id.* at 21.) Ruby Gibson told investigators that she had heard her son and Ms. McCarthy speaking in the bedroom around 1 a.m. that day and that Shawn Gibson had left the residence without Ms. McCarthy early on the morning of July 31. (*Id.*) According to the mother, no one else had entered her son's bedroom. (*Id.*)

According to the AUSA, a postmortem examination was conducted on the body of Ms. McCarthy at 6 p.m. on July 31 by Dr. Stephen Adams. (*Id.* at 24.) The medical

---

[2] This proffered testimony also formed the factual basis of Gibson's earlier pleas of guilty to charges of heroin distribution. (*See* Doc. 67 at 13 ("These witnesses included the five individuals that Gibson has admitted distributing heroin to that day . . . .").

5

examiner was of the opinion that Ms. McCarthy died 8–12 hours before his examination. (*Id.*) Dr. Adams's internal examination was unremarkable and revealed no apparent cause of death. He did note congestion and edema in the lungs, which is consistent with a heroin overdose. (*Id.*) The medical examiner reported that heroin is rarely found in blood when tested because it breaks down so quickly into morphine and 6–monoacetylmorphine. (*Id.* at 25.) Both chemicals were found in Ms. McCarthy's blood. (*Id.*) Dr. Adams would have testified that the morphine level in Ms. McCarthy's blood was so high as to be in the lethal range. (*Id.*) The medical examiner would have testified that the cause of McCarthy's death was the result of "acute drug: morphine from heroin intoxication." (*Id.*)

After listening to the AUSA, Judge Sessions thereupon inquired of Gibson as follows:

> THE COURT: All right. Mr. Gibson, did you hear the recitation from the U.S. Attorney?
> THE DEFENDANT: Yes, I did, your Honor.
> THE COURT: And as to the relevant facts, that is to your distribution of heroin to Jill McCarthy resulting in her death, do you admit or deny those allegations?
> THE DEFENDANT: I admit to them.

(*Id.* at 28.)

Judge Sessions determined that Gibson's plea of guilty was a knowing and voluntary plea, entered into by Gibson with a full understanding of the nature of the charge and the constitutional rights Gibson was waiving by his plea. (*Id.* at 30.) Judge Sessions found that the plea had an independent basis in fact and was made free from any coercive influences or promises or assurances beyond those set forth in the Plea

Agreement. (*Id.*) The plea was accepted and the preparation of a presentence report was ordered. (*Id.* at 29, 30.)

### B. Sentencing

The Presentence Report (PSR) was submitted to the Court in which it was concluded that Gibson faced a Sentencing Guideline range of 262 to 327 months, based on an offense level of 37 and a criminal history category of III. (PSR at 40, ¶ 131.) The PSR also noted that Gibson faced a mandatory minimum term of 20 years pursuant to 21 U.S.C. § 841(b)(1)(C). (*Id.* at 39, ¶ 130.) The Sentencing Guideline calculation included a two-level enhancement for obstruction of justice, noting that while detained Gibson had recruited a fellow inmate, Lester Braddock, to testify that Jill McCarthy had obtained the heroin that led to her death from another source. (*Id.* at 20, ¶¶ 73–74.) Braddock later recanted this story. (*See id.* ¶ 74; Doc. 67 at 27.) Despite Gibson's early attempt to suborn Braddock's perjury, the PSR concluded that this matter was an extraordinary case and accorded the acceptance-of-responsibility adjustment to Gibson in light of Gibson's plea to a 20-year mandatory minimum count, his perceived genuine expressions of remorse, and his cooperative behavior during the PSR process.
(PSR at 28, ¶¶ 85–86.)

Both parties filed sentencing memoranda with the Court. (Docs. 56, 58.) The government objected to the application of the acceptance-of-responsibility adjustment in light of Gibson's obstructive conduct and urged the Court to impose a sentence at the high end of the Sentencing Guideline range. (Doc. 56 at 5–6.) Counsel for Gibson contested the application of the obstruction-of-justice enhancement. (Doc. 58 at 2–3.)

7

The memorandum further sought a downward departure to a term of imprisonment of 240 months. (*Id.* at 2.) Alternatively, counsel argued for a sentence at the low end of the applicable sentencing range, 262 months. (*Id.* at 3.)

Gibson appeared before Judge Sessions for sentencing on November 17, 2003. (Doc. 68.) Counsel for Gibson withdrew the objection to the obstruction-of-justice enhancement. (*Id*. at 15.) The government continued to assert that Gibson should be denied the acceptance-of-responsibility reduction. As a result, Judge Sessions engaged in a colloquy with Gibson, in which Gibson admitted that he supplied heroin to Ms. McCarthy on the night of her death and that his effort to create false exculpatory evidence was caused by a belief that he was "[u]p against a wall." (*Id.* at 27–28.) Judge Sessions heard argument from Gibson's counsel in support of a downward departure based on the "totality of circumstances." (*Id.* at 32; *see also id.* at 35–36.) Gibson was given an opportunity to address the Court. (*Id.* at 39.) During that allocution, Gibson expressed remorse for his actions while acknowledging again that he provided the heroin to Ms. McCarthy that led to her death. (*Id.* at 43, 44.) The Court heard argument from the government and received victim impact statements from members of the McCarthy family. (*Id.* at 45–54, 58–68.)

Judge Sessions ultimately determined that despite Gibson's attempt to obstruct justice, the offense-level reduction for acceptance of responsibility was appropriate. (*Id.* at 73, 77.) The downward departure sought by Gibson based on the totality of circumstances was denied. (*Id.* at 72.) After making the applicable Sentencing Guideline calculation, the Court sentenced Gibson to "300 months on the single-count information

and Counts 3, 6, 8 of the indictment and 240 months on Counts 4, 5, 7, 9 of the indictment, each count to be run concurrently." (*Id*. at 77.) Gibson was advised of his right to a direct appeal. (*Id.* at 79.) No direct appeal was taken.

### C.     The § 2255 Motion

On September 11, 2015 Gibson filed the instant § 2255 Motion (Doc. 64). Gibson now asserts that he should be resentenced, contending that his mandatory minimum sentence "is no longer applicable" in light of the Supreme Court decision in *Burrage v. United States*, 134 S. Ct. 881 (2014). (*Id.* at 4.) As here, *Burrage* involved the sentence enhancement provision of the Controlled Substances Act, 21 U.S.C. § 841, which increases the statutory mandatory maximum and minimum sentences for narcotics convictions where death or serious bodily injury "results from" a victim's use of the controlled substance distributed by the defendant. 21 U.S.C. § 841(b)(1)(C). The Supreme Court, consistent with, and following *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 133 S. Ct. 2151 (2013), held in *Burrage* that the "death resulting" provision was an element of the statute and thus had to be found by a jury beyond a reasonable doubt, and was not merely a sentencing factor that could properly be determined by the sentencing court on a preponderance of the evidence. *Burrage*, 134 S.Ct. at 887. Specifically, the *Burrage* Court held that the "death resulting" element requires a but-for causal relationship between the use of the controlled substance distributed by the defendant and a victim's death—i.e., a defendant cannot be held liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless a victim's

use of the drug distributed by the defendant is found by a jury beyond a reasonable doubt to be a but-for cause of death or serious injury.  *Id.* at 892.

The government opposes Gibson's Motion.  (Doc. 69 at 5.)  It argues that (1) the Motion is barred by § 2255's one-year statute of limitations, (2) Gibson's claim is barred because of procedural default, and (3) *Burrage* has no application here in light of Gibson's plea of guilty and because Gibson "was not sentenced to the mandatory minimum 20-year term under 21 U.S.C. § 841(b)(1)(C)."[3]  (*Id.*)

## II.     Discussion

### A.     Statute of Limitations

The government contends that Gibson's Motion is barred by the one-year statute of limitations which governs such motions.  Subsection (f) of 28 U.S.C. § 2255 establishes a one-year period of limitations for motions brought pursuant to this section.  The one-year period runs from the latest of four dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[3] This last assertion regarding Gibson's sentence is meritless and warrants little discussion as it is based on a misreading of the record.  As noted above, the judgment clearly reveals that Gibson was indeed convicted of an offense which triggered the 20-year mandatory minimum for distributions with death resulting under § 841(b)(1)(C), and Gibson was sentenced pursuant to that section.  (Doc. 59 at 1.)

10

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Thus, "[a] motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs from 'the date on which the judgment of conviction becomes final.'" *Clay v. United States*, 537 U.S. 522, 524 (2003) (quoting 28 U.S.C. § 2255(f)(1)). "[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005). In 2003, the Federal Rules of Appellate Procedure provided, in relevant part, that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after . . . the entry of either the judgment or the order being appealed." Fed. R. App. P. 4(b)(1)(A)(i). Also in 2003, Federal Rule of Appellate Procedure 26(a)(2) excluded Saturdays, Sundays, and legal holidays from this ten-day calculation. Since Gibson's judgment of conviction was entered on November 18, 2003 (Doc. 59) and no notice of appeal was filed, his judgment of conviction became final on December 4, 2003, one day after his time to appeal expired. Given the one-year limitations period, Gibson had until one year after that date—December 4, 2004—to file a petition under § 2255(f)(1). Yet Gibson waited over a decade—September 11, 2015—to file the instant Motion.

11

(Doc. 64.) Gibson's Motion is thus barred by the statute of limitations, unless one of the three remaining § 2255(f) exceptions apply.[4]

No argument is advanced that the exceptions found at (f)(2) or (f)(4) apply, and they clearly do not. The remaining exception, § 2255(f)(3), requires that a newly recognized right must have been "made retroactively applicable to cases on collateral review." The Supreme Court has unequivocally stated that "a new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001) (internal quotation marks omitted); *see also United States v. Redd*, 735 F.3d 88, 91 (2d Cir. 2013) (per curiam). As many courts to consider the question have concluded, the Supreme Court did not expressly make its holding in *Burrage* to be retroactive to cases on collateral review. *Stewart v. United States*, 89 F. Supp. 3d 993, 996 (E.D. Wis. 2015) (citing *United States v. Bourlier*, Nos. 3:10cr30/MCR/EMT, 3:14cv609/MCR/EMT, 2014 WL 6750674, at *2 (N.D. Fla. Dec. 1, 2014), *appeal docketed*, No. 14-15750 (11th Cir. Dec. 24, 2014); *Alvarez v. Hastings*, Civil Action No. CV214–070, 2014 WL 4385703, at *4 (S.D. Ga. Sept. 5, 2014); *De La Cruz v. Quintana*, Civil Action No. 14–28–KKC, 2014 WL 1883707, at *6 (E.D. Ky. May 1, 2014); *Taylor v. Cross*, Case No. 14–cv–304–DRH, 2014 WL 1256371, at *3 (S.D. Ill. Mar. 26, 2014); *Powell v. United States*, Civil No. 3:09CV2141(EBB), 2014 WL 5092762, at *2 (D. Conn. Oct. 10, 2014)).

---

[4] It bears noting that the government appears to erroneously conflate the exception found at § 2255(f)(1) with the one found at § 2255(f)(3) when it argues that (f)(1) bars Gibson's Motion because *Burrage* became final on January 27, 2014. (Doc. 69 at 5.) In fact, for purposes of analysis under (f)(1), it is the date that *Gibson's* convictions became final—December 4, 2003—that controls the analysis.

Without substantive analysis, the government states the Department of Justice has taken the view that *Burrage* is applicable to cases on collateral review. (Doc. 69 at 6.) The government doesn't explain this perspective in light of the numerous decisions concluding that *Burrage* does not apply retroactively to cases on collateral review. But if one were to assume that the Supreme Court made *Burrage* retroactively applicable to cases on collateral review, Gibson faces a factual hurdle that he cannot overcome. *Burrage* was decided on January 27, 2014. Thus, Gibson had a year from that date in which to file his § 2255 motion. His Motion was filed on September 11, 2015, over seven months after the January 28, 2015 due date. Accordingly, for these reasons, 28 U.S.C. § 2255(f)(3) affords Gibson no relief from the statute-of-limitations bar.[5]

## B.   Equitable Tolling

The one-year statute of limitations established by 28 U.S.C. § 2255(f) "is not a jurisdictional bar," and is subject to equitable tolling. *Green v. United States*,

---

[5] Aside from the Supreme Court expressly holding a new rule to be retroactive, there are two other potential avenues for making such a rule retroactive: The rule could be made retroactive by a "'combination of holdings'" that "'necessarily dictate retroactivity of the new rule,'" or the Supreme Court could place the new rule within a category of cases previously held to be retroactive. *Herrera-Gomez v. United States*, 755 F.3d 142, 145–46 (2d Cir. 2014) (quoting *Tyler*, 533 U.S. at 666). "The clearest instance, of course, in which [the Supreme Court] can be said to have 'made' a new rule retroactive is where [it has] expressly [ ] held the new rule to be retroactive in a case of collateral review and applied the rule to that case." *Id.* (alterations in original) (quoting *Tyler*, 533 U.S. at 668 (O'Connor, J., concurring)). However, the Supreme Court left open the possibility that, "'with the right combination of holdings,' it could make a new rule retroactive for purposes of the successive habeas statutes over the course of two or more cases, but 'only if the holdings in those cases necessarily dictate retroactivity of the new rule.'" *Herrera-Gomez*, 755 F.3d at 145 (quoting *Tyler*, 533 U.S. at 666). Lastly, the "two categories of cases previously held to be retroactive" include "new substantive rules that place 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe'; and new procedural rules that 'are implicit in the concept of ordered liberty.'" *Id.* at 146 (quoting *Teague v. Lane*, 489 U.S. 288, 311 (1989)).

The Supreme Court has not made the holding in *Burrage* retroactive by any of these means. Moreover, it is clear that the decision in *Burrage* necessarily flows from the Court's decision in *Alleyne*, 133 S. Ct. 2151, *Burrage*, 134 S. Ct at 887, and the Second Circuit has held that *Alleyne* has not been "made retroactive on collateral review." *Redd*, 735 F.3d at 92.

260 F.3d 78, 82 (2d Cir. 2001).  However, "[e]quitable tolling applies only in . . . rare and exceptional circumstance[s]." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation marks omitted).  "[T]olling is appropriate 'only if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance[] stood in his way and prevented timely filing.'" *Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010) (second alteration in original) (emphasis omitted) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

Accordingly, Gibson "must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing.'" *Rivera v. United States*, 448 F. App'x 145, 146 (2d Cir. 2011) (summary order) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).  Such a causal relationship is not demonstrated "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde*, 224 F.3d at 134.  In this case, Gibson has not shown that any extraordinary circumstances prevented him from bringing this Motion in a timely manner.

A compelling showing of "actual innocence" may also provide an equitable exception to the limitations period.  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931–36 (2013); *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (a claim of actual innocence must be both credible and compelling).  But here Gibson does not dispute his guilt on the underlying heroin distribution that led to Ms. McCarthy's death.  In fact, he repeatedly took responsibility for the events that led to Ms. McCarthy's death.  (*See, e.g.*, Doc. 67 at 28.)  Rather, he challenges the application of the mandatory minimum sentence arising

14

from his conduct that caused her death. (*See* Doc. 64 at 4.) An attack on the validity of a sentence enhancement is not a claim of actual innocence because a claim of actual innocence means factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623–24 (1998); *Darby v. United States*, 508 F. App'x 69, 71 (2d Cir. 2013) (summary order); *United States v. Edwards*, 2015 WL 3793807, No. 12–20015–01–CM (D. Kan. June 17, 2015) (rejecting an assertion that *Burrage* involved an actual innocence claim). Equitable tolling is therefore not justified.

### C. Procedural Default and Actual Innocence

The government argues that even if the Motion were not time-barred, it would be procedurally barred because Gibson failed to pursue a direct appeal. (Doc. 69 at 6.) "In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) (*citing Yick Man Mui v. United States*, 614 F.3d 50, 53–54 (2d Cir. 2010); *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007)). Gibson did not raise on direct appeal the sentencing issue he now raises in the Motion. Because of this, he may not assert it in this proceeding. *DeJesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) ("[I]f a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted.").

Gibson also makes no attempt to show cause, defined as "something *external* to the petitioner" that "cannot fairly be attributed to him," for his failure to raise this issue

15

on direct appeal. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). And, as discussed previously, he makes no showing of actual innocence. For these reasons his Motion is barred by his procedural default.

**D.     Waiver**

Finally, the government argues that the Motion is barred because of Gibson's plea of guilty. Specifically, the government states that "Gibson pleaded guilty, admitting that he 'knowingly and intentionally distributed heroin . . . to Jill McCarthy, and also the death of Jill McCarthy resulted from the use of that heroin.'" (Doc. 69 at 5–6 (alteration in original) (quoting Doc. 67 at 4–5).) "It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle v. United States*, 815 F. 2d 879, 881 (2d Cir. 1987) (citation omitted). Also, after *Apprendi*, "it was well settled under case law . . . that a defendant's admission of an element that would enhance his sentence during his guilty plea allocution was equivalent to that element having been determined by a jury beyond a reasonable doubt." *United States v. Melville*, No. 13–CR–205 (ARR), 2014 WL 173416, at *2 (E.D.N.Y. Jan. 13, 2014) (citing *United States v. Brooker*, 543 U.S. 220, 244 (2005); *United States v. Doe*, 66 F. App'x 249, 252 (2d Cir. 2003)). *Alleyne* did not "disturb[] this rule." *Id.*[6]

---

[6] "*Apprendi* holds that 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *United States v. Doe*, 66 F. App'x at 252 (quoting *Apprendi*, 530 U.S. at 490). *Alleyne* holds "that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2155.

Gibson does not challenge the jurisdiction of the Court, but he argues that proof of an element of the offense—a "but-for" causal relationship between the heroin distribution and Ms. McCarthy's death—was lacking.  This argument fails because Gibson specifically plead guilty to the charge in Count 8 that included as an essential element the "death resulting" language of § 841(b)(1)(C).  As is evident from the transcript of the Change of Plea hearing, Gibson admitted to the facts recited by the government that related to Gibson's "distribution of heroin to Jill McCarthy resulting in her death." (Doc. 67 at 28.)  This record demonstrates that proof of the "death resulting" element was sufficient given the evidence from the medical examiner that heroin intoxication caused the death of Ms. McCarthy and Gibson's admissions during the plea allocution that he distributed the heroin that caused her death.  *See Londono-Marin v. United States*, 13-cv-5488, 2013 U.S. Dist. LEXIS 148993, at *2 ("[Defendant] admitted in open court each factual element necessary to trigger the mandatory minimum . . . ."); *see also United States v. Johnson*, 732 F. 3d 577, 584 (6th Cir. 2013) ("We have recognized that *Alleyne*'s extension of *Apprendi* to facts that increase a minimum statutory sentence left undisturbed our decisions holding that a defendant's knowing admission of the facts necessary for an enhanced sentence is fatal to his *Apprendi* claim.").  Furthermore, Gibson's plea admissions are considered "the equivalent of a jury finding," *see Doe*, 66 F. App'x at 252 ("[A]ll the relevant sentencing facts were admitted in a plea allocution, the equivalent of a jury finding . . . ."), and "even if *Alleyne* was implicated" in this case, *Alleyne* would not apply because the ruling is not applied retroactively. *Londono-Marin*, 2013 U.S. Dist. LEXIS 148993, at *2 ("*Alleyne* does not apply here for

17

two reasons. . . . [1] Londono-Marin pled guilty to the charged offense and allocuted to all of the facts necessary for the application of the ten-year mandatory minimum. . . . [2] *Alleyne* would not apply retroactively."); *see also supra* pp. 13 n.5.

Accordingly, because Gibson plead guilty to the offense, which included admitting to the element of Count 8 that led to the mandatory minimum sentence, his claim has been waived.

## Conclusion

Based on the foregoing, Gibson's Motion is barred by the statute of limitations and equitable tolling is not available to him. His Motion is also subject to procedural default and is barred by his guilty plea. Accordingly, Gibson's Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 64) should be DENIED.

Dated at Burlington, in the District of Vermont, this 20th day of January, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).